<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

LUTZ SURGICAL PARTNERS PLLC,
*et al.*,

                         Plaintiffs,

                           v.

AETNA, INC., *et al.*,

                         Defendants.

Case No. 3:15-cv-02595 (BRM) (TJB)

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Summary Judgment (ECF No. 179) filed by Plaintiffs Lutz Surgical Partners PLLC ("Lutz") and NYC Corrective Chiropractic Care, P.C. ("NYCC") (collectively, "Plaintiffs"), and a Cross Motion for Summary Judgment (ECF No. 183) filed by Defendants Aetna, Inc. and Aetna Life Insurance Company (together, "Aetna"). Both parties filed briefs in further support of their motions. (ECF Nos. 190 and 196.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Plaintiffs' Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and Aetna's Cross Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

I.     **BACKGROUND**

The factual background of this dispute is explained in the Court's Opinion dated March 29, 2018 (ECF No. 151), which the Court incorporates by reference. The relevant procedural history is summarized as follows.

On October 24, 2014, Plaintiffs filed a Complaint, asserting a claim under the Employee Retirement Income Security Act of 1974 ("ERISA") § 1132(a)(1)(B) (or Section 502(a)(1)(B)) based on Aetna's alleged failure to pay benefits due under Aetna's health insurance plans ("Aetna Plans") (Count I), and a claim for equitable and injunctive relief under ERISA § 1132(a)(3) (or Section 502(a)(3)) to remedy Aetna's alleged violations of its ERISA fiduciary duties (Count II). (ECF No. 1.) On December 7, 2015, Aetna filed a Counterclaim, asserting counterclaims for setoff as against the overpayments it allegedly made to Plaintiffs (Count I), money had and received to recover the alleged overpayments (Count II), and accounting of all the alleged overpayments (Count III), if the Court finds Plaintiffs are entitled to any monetary relief. (ECF No. 86.) Plaintiffs allege Aetna's recovery policy permits "cross-plan offsets," by withholding the amounts allegedly overpaid to providers on behalf of Plan A[1] (for services rendered to Plan A insureds) from payments due to providers of Plan B benefits (for services provided to Plan B insureds). (ECF No. 151 at 3.)

On July 1, 2020, Plaintiffs filed a Motion for Summary Judgment. (ECF No. 179.) On September 30, 2020, Aetna filed a Cross Motion for Summary Judgment. (ECF No. 183.) On December 18, 2020, Plaintiffs filed a brief in further support of its motion. (ECF No. 190.) On March 19, 2021, Aetna filed a brief in further support of its motion. (ECF No. 196.)

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient

---

[1] "Plan A" and "Plan B" are used throughout to distinguish, generally and by way of example, different employer-sponsored plans.

evidentiary basis on which a reasonable jury could find for the nonmoving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *id.* at 255).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331 (citing 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2727 (2d ed. 1983)). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either: (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim," or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* (citations omitted). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. In deciding the merits of a party's motion for summary judgment, the court's role is not

to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## III.    DECISION

### A.    Proper Defendants

#### 1.    Aetna Health Is a Proper Defendant

Aetna maintains Plaintiffs may not assert claims on behalf of several health maintenance organization ("HMO") members whose plans are administered by Aetna Health, Inc. ("Aetna Health"), a non-party. (ECF No. 184 at 30.) Aetna states it never insured, administered, or acted as fiduciaries for these HMO plans. (ECF No. 196 at 11.) Plaintiffs allege, from 2015 to 2020, Aetna Health labeled itself as a "Defendant/Counterclaimant" and participated actively in this litigation. (ECF No. 190 at 56.) Plaintiffs insist Aetna Health should not avoid judgment based on a technicality, because Aetna has treated Aetna Health as a party, which has actively exploited the discovery tools available to a party to discover information to Aetna's advantage. (*Id.* at 57.) The Court agrees.

"On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Persons may be added as defendants in an action when:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same

4

transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). The word "transaction" in Rule 20(a)(2) has "flexible meaning and may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *DeMarco v. DIRECTV, LLC*, Civ. A. No. 14-4623, 2015 U.S. Dist. LEXIS 146009, at *9 (D.N.J. Oct. 28, 2015) (citing *Lopez v. City of Irvington*, Civ. A, No. 05-5323, 2008 U.S. Dist. LEXIS 14941, at *6–7 (D.N.J. Feb. 28, 2008)). "Permissive joinder falls within the discretion of the court and is to be liberally granted." *Collins v. Cnty. of Gloucester*, Civ. A. No. 06-2589, 2008 U.S. Dist. LEXIS 29327, at *6 (D.N.J. Apr. 9, 2008) (citing *Snodgrass v. Ford Motor Co.*, Civ. A. No. 96-1814, 2002 WL 485688, at *2 (D.N.J. Mar. 28, 2002)); *see also Exeter Twp. v. Franckowiak*, Civ. A. No. 17-2709, 2018 U.S. Dist. LEXIS 66706, at *11 (E.D. Pa. Apr. 20, 2018) (quoting *Gay v. City of Phila.*, Civ. A. No. 03-5358, 2005 U.S. Dist. LEXIS 7060, at *7 (E.D. Pa. Apr. 20, 2005)) ("A court should generally apply a liberal approach to permissive joinder."). "[T]he district court has discretion to deny joinder pursuant to Rule 20 if it would result in prejudice, expense, or delay." *Exeter*, 2018 U.S. Dist. LEXIS 66706, at *11 (quoting *Gay*, 2005 U.S. Dist. LEXIS 7060, at *7); *see also Heil v. Belle Starr Saloon & Casino*, Civ. A. No. 09-5074, 2012 U.S. Dist. LEXIS 202019, at *9 (D.S.D. June 19, 2012) (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)) ("[I]f all the prerequisites of Rule 20 are met, the court may join the defendants under Rule 21 if such joinder would not cause undue prejudice or delay to any other party.").

The Court finds it proper to join Aetna Health as a defendant. First, this joinder is permissible under Rule 20(a)(2). Plaintiffs' ERISA claims against Aetna Health arise out of the same series of transactions or occurrences with those for Aetna, *i.e.*, Aetna's and Aetna Health's

5

alleged practice of cross-plan offsetting in violation of ERISA. Aetna and Aetna Health therefore face common questions of law and fact here. Second, the joinder of Aetna Health would not cause undue prejudice or delay. It is undisputed that Aetna Health and Aetna together substantially participated in the discovery for this litigation to the advantage of Aetna. (ECF No. 190 at 56–57.) That participation included making expert disclosures and sending Plaintiffs requests for production of documents. (*Id*.) Also, Plaintiffs asserted ERISA claims concerning Aetna Health's HMO plans, to which Aetna presented defenses as it did with Aetna Plans. (*See* ECF No. 196-9.)

Accordingly, the Court adds Aetna Health as a defendant. Aetna is not entitled to summary judgment on Plaintiffs' Count I and Count II concerning the HMO plans solely because Aetna Health was previously a non-party.

### 2.    Aetna Inc. Is Not a Proper Defendant

Aetna contends Plaintiffs' claims against Aetna Inc. fail as a matter of law, because Aetna Inc. is not the insurer or administrator of any of Aetna Plans, nor is it a fiduciary. (ECF No. 184 at 29.) Aetna alleges Aetna Inc. is the holding company for the "Aetna" brand name, and as such, is not a proper party here. (*Id.*) Plaintiffs maintain Aetna Inc. should remain a party, at minimum to bear responsibility for any liability by its 100% subsidiary, Aetna Health. (ECF No. 190 at 58.) The Court disagrees.

"District courts have 'broad discretion' in deciding whether to sever a party pursuant to Rule 21." *Turner Constr. Co. v. Brian Trematore Plumbing & Heating, Inc.*, Civ. A. No. 07-666, 2009 U.S. Dist. LEXIS 92309, at *11 (D.N.J. Oct. 5, 2009) (citing *Lopez*, 2008 U.S. Dist. LEXIS 14941, at *5); *see also Zuzel v. SEPTA*, Civ. A. No. 19-268, 2019 U.S. Dist. LEXIS 62950, at *4 (E.D. Pa. Apr. 11, 2019) (citing *Cooper v. Fitzgerald*, 266 F.R.D. 86, 88 (E.D. Pa. 2010)) ("If a

party is improperly joined, courts have broad discretion pursuant to Rule 21 either to drop the party or to sever claims.").

For a Section 502(a)(1)(B) claim, "the proper defendant is the plan itself or a person who controls the administration of benefits under the plan." *Evans v. Emp. Benefit Plan*, 311 F. App'x 556, 558 (3d Cir. 2009) (citing 29 U.S.C. § 1132(a)(1)(B)); *see also Hocheiser v. Liberty Mut. Ins. Co.*, Civ. A. No. 17-6096, 2018 U.S. Dist. LEXIS 47870, at *14 (D.N.J. Mar. 22, 2018) (citations and internal quotation marks omitted) ("[T]he only proper defendants in a [Section] 502(a)(1)(B) claim are the plan itself (or plan administrators in their official capacities only)."). For a Section 502(a)(3) claim, the proper defendant could be a plan fiduciary, *Lash v. Reliance Std. Life Ins. Co.*, Civ. A. No. 16-235, 2017 U.S. Dist. LEXIS 75655, at *8 (E.D. Pa. May 18, 2017) ("[B]ecause [the defendant] is alleged to be a fiduciary claims administrator which breached a fiduciary duty to [p]laintiff, it may be a proper defendant in a civil action pursuant to § 1132(a)(3)."), or a nonfiduciary that knowingly participated in a plan fiduciary's breach. *Nat'l Sec. Sys. v. Iola*, Civ. A. No. 00-6293, 2013 U.S. Dist. LEXIS 138044, at *7 (D.N.J. Sept. 25, 2013) ("[Section] 502(a)(3) . . . permits claims for equitable relief against those who knowingly participate in a fiduciary's breach of fiduciary duty under ERISA."); *see also Spear v. Fenkell*, Civ. A. No. 13-2391, 2016 U.S. Dist. LEXIS 135374, at *100 (E.D. Pa. Sept. 30, 2016) (citing *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 248–49 (2000)) ("The [c]ourt construed section 1132(a)(3) (ERISA § 502(a)(3)) to permit an action against non-fiduciaries who 'knowing[ly] particip[ate]' in a fiduciary breach.").

Here, it is undisputed that Aetna Inc. is not a plan; nor does it insure members, administer health insurance plans, or serve as a plan fiduciary. (ECF No. 184 at 29; ECF No. 190-1 at 9.) Also, Aetna Inc. is not alleged to have knowingly participated in any fiduciary breach of Aetna.

7

Therefore, Aetna Inc. is not a proper defendant. The alleged fiduciary breach of its subsidiary Aetna Health is irrelevant. *See Johnson v. UnumProvident Corp.*, Civ. A. No. 03-68, 2003 U.S. Dist. LEXIS 11383, at *7 (D. Me. June 27, 2003) (citing *Adkins v. UNUM Provident Corp.*, 191 F. Supp. 2d 956, 958 (M.D. Tenn. 2002)) ("[A] holding company of an ERISA fiduciary does not automatically share the subsidiary's fiduciary duties."). As a result, the Court exercises its discretion under Rule 21 to drop Aetna Inc. as a defendant.

In conclusion, the Court adds Aetna Health as a defendant, and removes Aetna Inc. as a defendant. Hereinafter, the term "Aetna" refers to Aetna Life Insurance Company and Aetna Health.

### B.    Plaintiffs' Standing

"To bring a civil action under ERISA, a plaintiff must have constitutional, prudential, and statutory standing." *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 74 (3d Cir. 2011) (quoting *Leuthner v. Blue Cross & Blue Shield of Ne. Pa.*, 454 F.3d 120, 125 (3d Cir. 2006)). "To ensure that the latter two forms of standing are satisfied in an ERISA case, a court must assure itself that the 'plaintiffs['] grievance . . . arguably fall[s] within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.'" *Id.* (quoting *Miller v. Rite Aid Corp.*, 334 F.3d 335, at 340 & n.1 (3d Cir. 2003)). "ERISA's statutory standing requirements are a codification of the zone of interest analysis typically used to determine prudential standing." *Id.* (quoting *Leuthner*, 454 F.3d at 126) (internal quotation marks omitted). Here, the parties dispute whether Plaintiffs have constitutional standing and statutory standing (*i.e.*, ERISA standing) to assert their ERISA claims.

8

**1.    The Court Declines to Decide Whether Plaintiffs Have ERISA Standing to Sue for Most of the Plan B Claims**

"ERISA confers standing to sue on a plan 'participant,' 'beneficiary,' or 'fiduciary.'" *NJSR Surgical Ctr., LLC. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, 979 F. Supp. 2d 513, 522 (D.N.J. 2013) (citing 29 U.S.C. § 1132(a)). "[H]ealth care providers . . . are not 'beneficiaries' or 'participants' as defined by ERISA, and thus these entities may not seek relief in their own name under the ERISA statute itself." *McCall v. Metropo. Life Ins. Co.*, 956 F. Supp. 1172, 1185 (D.N.J. 1996) (citations omitted); *see also Health Scan, Ltd. v. Travelers Ins. Co.*, 725 F. Supp. 268, 269 (E.D. Pa. 1989) (citing *Cameron Manor, Inc. v. United Mine Workers of Am.*, 575 F. Supp. 1243 (W.D. Pa. 1983)) ("[A] health care provider possesses no ERISA standing in its own right."). However, "[h]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n.10 (3d Cir. 2014)). "An assignment of the right to payment logically entails the right to sue for non-payment." *Id.* (citing *I.V. Servs. of Am., Inc. v. Inn Dev. & Mgmt.*, 7 F. Supp. 2d 79, 84 (D. Mass. 1998)). Here, it is undisputed that Plaintiffs have no ERISA standing in their own right, but may establish ERISA standing with a valid assignment from a plan participant or beneficiary.

**a.    Plaintiffs Cannot Establish ERISA Standing Based on a Designation of Authorized Representative**

Plaintiffs contend they may assert ERISA claims based on a designation of Authorized Representative ("AR") of the Plan B members, and this designation is not affected by any anti-assignment provision ("AAP") that may exist in a plan document. (ECF No. 180 at 44.) Plaintiffs argue the AR designation is not subject to state law formality requirements for granting power of

attorney ("POA"). (ECF No. 190 at 49.) Plaintiffs allege Aetna recognizes the assignments to Lutz without any requirement of witnesses to signings, notarization, or even documents, and the same should apply with Lutz's AR designations. (*Id.* at 50.) Aetna insists Plaintiffs' AR forms do not give them derivative ERISA standing, because: (1) the forms do not satisfy the formality requirements for granting POA; (2) POAs may only appoint as attorneys-in-fact individuals or qualified banks, which Plaintiffs are not; (3) suits under a POA must be brought in the plan members' names, not the providers' own names; and (4) Plaintiffs have not established the individualized scope of each AR form permits Plaintiffs' ERISA claims. (ECF No. 184 at 50–52; ECF No. 196 at 18–19.) The Court agrees.

Plaintiffs cannot use the AR designation "as an independent basis for [ERISA] standing because the regulation from which it derives, 29 C.F.R. 2560.503-1(b)(4), 'applies to internal submission of claims and appeals on behalf of beneficiaries, not civil lawsuits in federal court.'" *Ross Cooperman, M.D., LLC v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 19-19225, 2020 U.S. Dist. LEXIS 232678, at *5 (D.N.J. Dec. 10, 2020) (quoting *Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, Civ. A. No. 14-6950, 2015 U.S. Dist. LEXIS 91815 (D.N.J. July 15, 2015)); *see also Torpey v. Blue Cross Blue Shield of Tex.*, Civ. A. No. 12-7618, 2014 U.S. Dist. LEXIS 11412, at *11 (D.N.J. Jan. 30, 2014) ("[T]he designation of an 'authorized representative' under the [p]lan applies to the administrative claims review process and does not confer standing to bring a civil action."). Instead, "provider plaintiffs are permitted to sue under ERISA only upon proof of a valid assignment of benefits." *In re Aetna UCR Litig.*, Civ. A. No. 07-3541, 2015 U.S. Dist. LEXIS 84600, at *42 (D.N.J. June 30, 2015); *see also Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. A. No. 17-4600, 2018 U.S. Dist. LEXIS 47181, at *19 (D.N.J. Mar. 22, 2018) ("[B]ecause the [p]roviders are not

beneficiaries or participants in the [p]lan, and because the anti-assignment provision invalidates [the [p]lan member's] purported assignment of benefits to the [p]roviders, the [p]roviders lack standing to pursue the ERISA claims."); *Brown v. BlueCross Blue Shield of Tenn., Inc.*, 827 F.3d 543, 546 (6th Cir. 2016) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991)) ("[A] provider obtains derivative standing to sue under ERISA only when the patient 'actually conveys' a 'valid assignment of benefits' under the plan.").

Plaintiffs cannot claim ERISA standing with the AR designation of a patient, when an AAP prevents Plaintiffs from obtaining an assignment from that patient. *Atl. Plastic*, 2018 U.S. Dist. LEXIS 47181, at *14 (concluding that an enforceable AAP precluded the providers from bringing an ERISA claim, even though "an assignment designate[d] the [p]roviders as the authorized representative to act on behalf of [the patient] and pursue an ERISA claim"); *see also Aerocare Med. Transp. Sys. v. IBEW Loc. 1249 Ins. Fund*, Civ. A. No. 18-90, 2018 U.S. Dist. LEXIS 212596, at *24 (N.D.N.Y. Dec. 18, 2018) (citing *MBody Minimally Invasive Surgery v. Empire Healthchoice HMO, Inc.*, Civ. A. No. 13-6551, 2016 U.S. Dist. LEXIS 66149, at *16 (S.D.N.Y. May 19, 2016)) (finding that, even though the "[p]laintiff was [a patient's] authorized representative," it "d[id] not negate the anti-assignment provision or otherwise entitle [p]laintiff to sue for recovery of benefits in federal court pursuant to ERISA"); *Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pacific Mar. Ass'n Welfare Plan*, Civ. A. No. 14-3191, 2016 U.S. Dist. LEXIS 29639, at *37–38 n.11 (C.D. Cal. Mar. 8, 2016) (quoting *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1144 (C.D. Cal. 2015)) ("ERISA regulations require that the plans allow an authorized representative to engage in appeal activities, and defendant allowing it should not waive its right to assert anti-assignment clauses as to something beyond this permissive activity.").

11

Plaintiffs also cannot establish ERISA standing by asserting a POA, because they are litigating in their own names, not on behalf of their patients. *O'Brien v. Aetna, Inc.*, Civ. A. No. 20-5479, 2021 U.S. Dist. LEXIS 33234, at *7 (D.N.J. Feb. 22, 2021) (quoting *N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, Civ. A. No. 18-10735, 2020 U.S. Dist. LEXIS 15723, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020)) ("Granting power of attorney is not an assignment and 'does not enable the grantee to bring suit in his own name.'"); *see also Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, Civ. A. No. 17-13086, 2018 U.S. Dist. LEXIS 144884, at *5 (D.N.J. Aug. 27, 2018) (citations omitted) ("[A]n attorney-in-fact lacks standing to sue in her own name."); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018) (citations omitted) ("A power of attorney . . . 'does not transfer an ownership interest in the claim,' but simply confers on the agent the authority to act 'on behalf of the principal.'"); *c.f. Peterson v. UnitedHealth Grp., Inc.*, 913 F.3d 769, 772, 779 (8th Cir. 2019) (concluding that a provider was "authorized to bring this [ERISA] action as a representative of his patients," when the provider pursued ERISA claims "on behalf of [his] patients" and "the plan beneficiaries").

In conclusion, Plaintiffs cannot base ERISA standing on an AR designation or a POA.

> **b.  The Court Declines to Decide Whether Lutz Has Obtained Assignment to Sue for Most of Its Plan B Claims**

Plaintiffs argue they have standing to assert their claims based on the assignments they received from their Plan B patients. (ECF No. 180 at 45.) Plaintiffs maintain the patients' assignment of benefits ("AOB") forms ultimately run to Lutz, because the AOB forms assign the right to receive and enforce benefits to Lutz's employees (including the independent contractors), who in turn assign that right to Lutz via their employment agreements. (ECF No. 190 at 37.) Aetna counters most of the AOB forms only contain an assignment to the individual physicians providing services, not Plaintiffs that are distinct legal entities from the physicians, and do not

assign the right to bring claims for future equitable, injunctive or declaratory relief to remedy a breach of fiduciary duty. (ECF No. 184 at 46, 50.) Aetna contends Plaintiffs' allegation that Lutz is an assignee of its employee physicians cannot salvage Lutz's ERISA claims, because Plaintiffs' Complaint lacks such an allegation and does not assert ERISA claims in the physicians' names. (ECF No. 196 at 13.) Aetna insists Lutz's late disclosure of the physicians' employment agreements is prejudicial to Aetna, which had no opportunity to conduct discovery on these potentially unauthenticated agreements, many of which are not properly signed or witnessed. (*Id.*) The Court agrees.

It is undisputed that, in some AOB forms, the assignees are the individual physicians or hospitals providing services, not Lutz. This is insufficient to establish Lutz as a valid assignee. First, Lutz is not one of the hospitals referred to in these AOB forms. Lutz only provides services at these hospitals, where its physicians are privileged to work. (ECF No. 190-1 at 8.) Second, in the ERISA context, an individual physician is a "distinct legal entity" from its employer or business practice. *Ass'n of N.J. Chiropractors, Inc. v. Data Isight, Inc.*, Civ. A. No. 19-21973, 2020 U.S. Dist. LEXIS 152890, at *5 (D.N.J. Aug. 24, 2020). Even if a physician's employer or practice obtains an assignment, it does not automatically render that physician a valid assignee. *Id.* (concluding that the plaintiff physician "individually d[id] not have a valid assignment of benefits" or the "standing to assert claims by virtue of the AOBs," in which the assignment of benefits ran to the plaintiff's practice, "not [the plaintiff] individually"); *see also Aetna UCR*, 2015 U.S. Dist. LEXIS 84600, at *39–40 (dismissing a physician's ERISA claims, because only his business was assigned the right to sue, and the assignment "language transfer[red] no rights to [the physician] himself"); *Reich v. Metrahealth Inc.*, Civ. A. No. 95-56385, 1996 U.S. App. LEXIS 16592, at *5 (9th Cir. June 18, 1996) (citations omitted) ("[T]he beneficiaries assigned

13

their claims to [the medical corporation the physician was associated with], not to [the physician]. Because [the physician] is neither a beneficiary under ERISA nor the beneficiaries' assignee, he lacks standing to pursue claims for alleged ERISA violations."). Conversely, an assignment to an individual physician does not automatically constitute an assignment to the physician's employer or practice. *Rahul Shah v. Blue Cross Blue Shield of Mich.*, Civ. A. No. 17-711, 2018 U.S. Dist. LEXIS 78948, at *8–9 (D.N.J. May 10, 2018) (finding that an assignment that "confer[red] standing to [an individual physician] to bring his claims against the [p]lan for violations of ERISA" did not cover the physician's practice as a "business entity"); *see also Med. Soc'y v. UnitedHealth Grp.*, Civ. A. No. 16-5265, 2017 U.S. Dist. LEXIS 146867, at *15 (S.D.N.Y. Sept. 11, 2017) ("Patient G assigned his claim to Dr. Knapp as a natural person, and not to Dr. Knapp's Practice as an incorporated entity. Consequently . . . Dr. Knapp's Practice [was] dismissed from this [ERISA] suit."). Therefore, the AOB forms that only designate individual physicians or hospitals as assignees do not confer an assignment to Lutz.

Nevertheless, the parties do not dispute that the physicians, as valid assignees in such AOB forms, may make a sub-assignment to Plaintiffs.[2] In other words, Lutz may establish

---

[2] There is a split among courts on the question of to whom a health care provider, which has obtained a valid assignment from a plan participant or beneficiary, may make a sub-assignment. Some courts suggest any entity, including a non-provider, can be the sub-assignee. *See, e.g.*, *Gables Ins. Recovery, Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, 813 F.3d 1333, 1339 (8th Cir. 2015) (citations omitted) ("[N]othing in [ERISA's] statutory language prohibits non-healthcare providers from obtaining derivative standing through a sub-assignment."); *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1388 (S.D. Fla. 2003) (citing *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 889, 893–94 (5th Cir. 2003)) (finding that a "collection agency had derivative standing," because "a participant in an ERISA plan executed an assignment of benefits to a provider for medical treatment he received, and the provider, in turn, assigned the participant's outstanding accounts to [the] collection agency which sought reimbursement from the insurer"). But other courts prohibit a non-provider from obtaining such a sub-assignment. *See, e.g.*, *Namdy Consulting v. Anthem Blue Cross Life & Health Ins. Co.*, Civ. A. No. 18-03243, 2018 U.S. Dist. LEXIS 238429, at *7 (C.D. Cal. July 17, 2018) (citations omitted) (holding that "ERISA does not permit a health care provider," who

14

ERISA standing, if it has obtained sub-assignments from its employee physicians via their employment agreements, provided these physicians have obtained valid assignments from the Plan B patients.

However, at this stage, Lutz cannot establish itself as a valid sub-assignee based on the employment agreements. First, some employment agreements produced by Lutz are not signed by its physicians. (*See* ECF No. 196 at 13 n.3; ECF No. 190-11 at 12; ECF No. 190-13 at 12.) This creates a material factual dispute concerning the validity of Lutz's alleged sub-assignments. *See Hope Health & Wellness, Inc. v. Aetna Health, Inc.*, Civ. A. No. 17-80673, 2017 U.S. Dist. LEXIS 168795, at *7 (S.D. Fla. Oct. 12, 2017) (citations and internal quotation marks omitted) (finding that certain "claim forms" were "insufficient to show a written assignment from a participant or beneficiary to the [p]laintiff," because "[t]he forms [we]re not signed by the participants or beneficiaries"). Second, though Lutz "is allowed to offer new evidence after summary judgment motions have been filed," the Court "will find that because of this new evidence, summary judgment is premature and additional discovery is necessary." *Davis v. Olmsted Twp.*, Civ. A. No. 06-2108, 2008 U.S. Dist. LEXIS 144226, at *25 (N.D. Ohio Sept. 5, 2008) (citing *Harrods Ltd v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002));

---

obtained an assignment from its patients, "to assign the right to sue to non-provider assignees such as" a collection agency); *Simon v. Value Behavioral Health, Inc.*, 955 F. Supp. 93, 95 (C.D. Cal. 1997) (holding that "a third party who [wa]s not a health care provider lack[ed] standing to sue on an assigned claim for ERISA benefits payment," which was obtained "from six health care providers and over 600 individual participants or beneficiaries"); *Clinical Partners v. Guardian Life Ins. Co. of Am.*, Civ. A. No. 94-1199, 1996 U.S. Dist. LEXIS 22226, at *12 (E.D.N.Y. May 30, 1996) (finding that the plaintiff collection agency, which obtained an assignment from a provider, did not have ERISA standing, because "[i]f health care providers, as assignees, could assign their legal rights regardless of the terms of ERISA plans, they could inflate their charges, collect the usual and customary payment for services under the plans and then sell causes of action to unrelated third parties such as the plaintiff"). The Court need not take a position on such a split, because the above cases either explicitly allow or do not prohibit healthcare providers, such as Plaintiffs, from obtaining a sub-assignment from their employee physicians, who have valid assignments from their patients.

*see also Pleasant-Bey v. Luttrell*, Civ. A. No. 11-2138, 2021 U.S. Dist. LEXIS 18580, at \*48 (W.D. Tenn. Feb. 1, 2021) ("The [c]ourt reopens discovery because [the d]efendants present new evidence with their motion for summary judgment."). Under Rule 56(d), "the Court is permitted to either deny or defer ruling on the motion for summary judgment to permit for additional discovery." *Young v. United States*, 152 F. Supp. 3d 337, 351 (D.N.J. 2015) (citing Fed. R. Civ. P. 56(d)(1)–(2)). Here, Aetna may be prejudiced by Plaintiffs' late disclosure of the employment agreements. *See Univ. of Kan. v. Sinks*, 565 F. Supp. 2d 1216, 1239 (D. Kan. 2008) ("Allowing this new evidence [of witness declarations] at the summary judgment stage will prejudice defendants[, who] had no notice of these witnesses until the summary judgment motion was filed."). This triggers Rule 56(d) and warrants additional discovery. *See Young*, 152 F. Supp. 3d at 351 (permitting additional discovery, because the plaintiff, in "constructive compliance with Rule 56(d)," objected to the defendant's first time and late disclosure of certain materials in support of the defendant's motion for summary judgment). The additional discovery would allow the parties to address potential deficiencies in Lutz's employment agreements with its physicians.

Accordingly, at this stage, the Court declines to consider these employment agreements, and will only examine whether the AOB forms in question contain a valid assignment to Lutz. Aetna asserts only eight Plan B claims (the "Eight Claims") are covered by an AOB form that designates Lutz as an assignee, and they are the Plan B claims for Member 24 (Offset 8), Member 33 (Offset 2), Member 57 (Offset 8), Member 80 (Offset 6), Member 80 (Offset 15), Member 81 (Offset 6), Member 81 (Offset 10), and Member 81 (Offset 42). (ECF No. 184 at 46–

47; ECF No. 196-9.) Plaintiffs contend it is irrelevant that Lutz Form #5[3] is not an assignment, because the two Plan B patients who signed Lutz Form #5 also signed Lutz Form #4, which contains a valid assignment to Lutz. (ECF No. 190 at 41 n.30.) Indeed, Lutz Form #4 contains an assignment to "the Provider and The Force Law Firm PC and their affiliated law firms," but does not provide a definition of the term "Provider." (ECF No. 180 at 101 at 30; ECF No. 180-105 at 31.) Because Aetna insists the term does not refer to Lutz (ECF No. 196 at 14), there is a material factual dispute as to the meaning of "Provider" in Lutz Form #4. As a result, the Court cannot find Lutz Form #4 contains a valid assignment to Lutz at this stage. Accordingly, Lutz may establish ERISA standing to sue only for the Eight Claims.

There is no basis to challenge the scope of Lutz's assignment as to the Eight Claims, such as whether the assignment includes a right to seek injunctive and declaratory reliefs. This is because, in Lutz Form #2, the patients assign to Lutz "all legal rights, claims or remedies [the patients] may have under ERISA . . . including any claims for benefits, for breach of fiduciary duty or other claims available under law against my insurer or claims administrator." (ECF No. 180-98 at 27; ECF No. 180-100 at 16; ECF No. 180-103 at 14; ECF No. 180-106 at 12, 14.) Such broad language is sufficient to confer Lutz the right to seek all monetary, injunctive and declaratory reliefs available under ERISA against Aetna. *See Masri v. Horizon Healthcare Servs.*, Civ. A. No. 16-6961, 2017 U.S. Dist. LEXIS 151077, at *11 (D.N.J. Sept. 18, 2017) (finding that the "all-inclusive" language "THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY" in the AOB form was "broad enough to

---

[3] Aetna identifies several recurring formats of Lutz's AOB forms, and labels them as Lutz Forms #1, #2, etc. (*See* ECF No. 184 at 49–50; ECF No. 196 at 14, 18.) Plaintiffs do not object to Aetna's labeling. (*See* ECF No. 190 at 41–42.) Lutz Form #5 involves the Plan B claims for Member 29 (Offset 72) and Member 57 (Offset 44). (ECF No. 196-9 at 4, 6.) The AOB forms for the Eight Claims are all in Lutz Form #2. (*Id.* at 2–3, 5.)

encompass claims for relief other than just payment of benefits" under ERISA); *Bloom v. Indep. Blue Cross*, 152 F. Supp. 3d 431, 444 (E.D. Pa. 2015) (finding that an assignment clause that "specifically included patients' rights and benefits" conferred the plaintiffs "the rights to seek any remedies" available to the patients under ERISA, including "injunctive or declaratory relief").

Because only the Eight Claims are covered by an AOB form that contains an assignment to Lutz, the Court will not make a decision on Lutz's ERISA standing to sue for the rest of the Plan B claims, which warrant no further consideration in the following analysis.

### c.      NYCC Has Not Been Assigned the Right to Sue

Plaintiffs contend NYCC has a valid assignment, because Aetna treated NYCC and its 100% owner Dr. Morse interchangeably, and Aetna's Provider Explanation of Benefits ("PEOB") form[4] recognized NYCC had the right to receive benefits. (ECF No. 190 at 37–38.) Plaintiffs suggest, because NYCC is 100% owned and operated by Dr. Morse, the AOB form that designates Dr. Morse as the assignee should also constitute a valid assignment to NYCC. (*Id.* (citing *Chiropractors*, 2020 U.S. Dist. LEXIS 152890, at *6).) Aetna maintains Dr. Morse's AOB form only contains an assignment to Dr. Morse as a natural person, which is not an assignment to NYCC. (ECF No. 184 at 49.) The Court agrees.

Plaintiffs cannot rely on *Chiropractors* to negate the fact that NYCC and Dr. Morse are distinct legal entities. The *Chiropractors* court concluded the plaintiff physician had not "obtained a valid assignment of benefits or power of attorney that would permit him to assert . . . ERISA claims on behalf of his patients." *Chiropractors*, 2020 U.S. Dist. LEXIS 152890, at *7.

---

[4] The parties agree Explanation of Benefits ("EOBs"), which go to patients, and PEOBs, which go to providers, disclose how much each Plan B owed and purported to pay. (ECF No. 184-2 at 10, 43; ECF No. 190 at 12; ECF No. 190-1 at 13.)

In reaching this conclusion, the *Chiropractors* court declined to consider the plaintiff's allegation that an AOB form, which designated his practice as a valid assignee, was sufficient to assign the benefits to the plaintiff as an individual, who was "the 100% owner of" his practice. *Id.* at *6. The *Chiropractors* court declined to consider the allegation because it did "not appear in the [c]omplaint," which could not be amended "through a brief." *Id.* (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). The *Chiropractors* court did not suggest, however, if the complaint indicated the plaintiff was the 100% owner of his practice, an assignment to his practice was necessarily an assignment to the plaintiff as an individual.

On the contrary, "the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner," because "incorporation's basic purpose is to create a distinct legal entity." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). Accordingly, NYCC, a professional corporation based in New York (ECF No. 1 ¶ 9), is a distinct legal entity from its sole owner Dr. Morse. *See Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 197 (E.D. Pa. 2010) (citing *Lyon v. Barrett*, 445 A.2d 1153, 1156 (N.J. 1982)) (finding that "[u]nder both New Jersey and Pennsylvania law," a physician could not "act as a substitute for" its professional corporation "in bringing claims," and even the "sole member of professional corporation" was a different entity from its professional corporation); *Gianoukas v. Campitiello*, Civ. A. No. 09-1266, 2009 U.S. Dist. LEXIS 95354, at *9 (S.D.N.Y. 2009) (quoting *Jacobs v. Life Ins. Co. of N. Am.*, 710 F. Supp. 521, 523 (S.D.N.Y. 1989)) ("Under New York law it is clear that a professional corporation must be regarded in the same fashion as any other corporation . . . its corporate identity is therefore statutorily separate from the identity of the individual."). In other words, the AOB form that contains an assignment only to Dr. Morse does not render NYCC an assignee.

19

Finally, the Court need not entertain Plaintiffs' allegation that Aetna treated NYCC and Dr. Morse interchangeably and its PEOB recognized NYCC's right to receive benefits, because Plaintiffs offer no legal authority that explains why this is relevant to the ERISA standing inquiry. *Hilburn v. State Dep't of Corr.*, Civ. A. No. 07-6064, 2012 U.S. Dist. LEXIS 106536, at *91 (D.N.J. July 31, 2012) ("The absence of authority is fatal to [d]efendant's argument."); *see also Rosemoor Suites, LLC v. Harleysville Lake States Ins. Co.*, 444 F. Supp. 3d 902, 907 n.5 (N.D. Ill. 2020) ("[T]he court must conclude that [the plaintiff] has waived an argument by failing to develop it adequately and by citing no legal authority."); *Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1002 n.1 (7th Cir. 2001) (quoting *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1057 n.5 (7th Cir. 2000)) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Plaintiffs could have argued the alleged actions of Aetna constitute a waiver of its right to challenge NYCC's ERISA standing, but chose not to do so. Plaintiffs' failure to develop this potential waiver argument and support it with legal authorities is inexcusable, in light of Plaintiffs' reliance on several legal cases for their argument in Part III.B.1.d, *infra*, that Aetna waived its right to invoke the AAPs to challenge Lutz's ERISA standing.

Accordingly, the Court finds NYCC has not established an assignment from its patients of the right to sue for the Plan B claim for Member 39 (Offset 66), which is NYCC's sole Plan B claim here. (ECF No. 196-9 at 7.) NYCC therefore has not established its ERISA standing.

### d.    The Court Declines to Decide Whether Aetna Waived the AAPs

Plaintiffs contend Aetna is legally barred from relying on any of its plans' AAPs, because Aetna waived its right to invoke the AAPs, by (1) following a written policy of treating providers as assignees when they file the standard claim Form 1500 that indicates an assignment to the

20

providers, and (2) communicating directly with Plaintiffs, asserting Plaintiffs have legal obligations to repay funds, and then withholding Plan B payments to Plaintiffs." (ECF No. 180 at 47; ECF No. 190 at 45–46.) Plaintiffs argue Aetna, by undertaking cross-plan offsets, deemed the benefits as being owed to Plaintiffs and recognized Plaintiffs had a legal claim to the benefit payment. (ECF No. 190 at 43–44.) Aetna maintains Plaintiffs cannot establish assignment, because the plans of many patients contain unambiguous, enforceable AAPs. (ECF No. 184 at 40–41.) Aetna insists it has not waived the AAPs, because (1) making payments directly to providers is a routine activity that cannot trigger waiver, and (2) Aetna was contractually required and permitted under the plans to make such direct payments to providers. (*Id.* at 43–44.) Aetna contends its internal policies are irrelevant to the waiver determination, because only external conducts or statements, which a plan participant or beneficiary can observe and rely on, can give rise to a waiver. (ECF No. 196 at 16.) Aetna posits there is at least a genuine issue of material fact as to whether it intentionally relinquished each AAP. (ECF No. 184 at 45.) The Court agrees.

AAPs "in ERISA-governed health insurance plans are generally enforceable." *Am. Orthopedic*, 890 F.3d at 455. "[C]ourts within this District routinely enforce unambiguous anti-assignment provisions contained in ERISA-governed plans, and thus, find that providers lack derivative standing to seek benefits from the plan on behalf of their patients." *Atl. Plastic*, 2018 U.S. Dist. LEXIS 47181, at *13 (citations omitted); *see also Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 64 (3d Cir. 2019) ("The anti-assignment provision at issue unambiguously prohibits assignment of [the plan participant's] right to benefit payments and is therefore enforceable, preventing [the provider] from acquiring derivative standing to bring its ERISA claim."). Here, the Court does not find, and Plaintiffs do not contend, the AAPs in question are ambiguous. The

AAPs are therefore enforceable.

However, Aetna may have waived its right to enforce the AAPs. Courts in this Circuit apply state law to determine whether a party waived its right under the AAP in an ERISA plan. *See, e.g.*, *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs.*, Civ. A. No. 19-8783, 2020 U.S. Dist. LEXIS 73174, at *15–16 (D.N.J. Apr. 27, 2020) (applying New Jersey law to determine whether "[d]efendants waived their right to enforce the" AAPs); *Am. Orthopedic*, 890 F.3d at 454 (applying Pennsylvania law to determine whether the defendant insurer waived its right to enforce an AAP); *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 606 (D.N.J. 2011) (finding that, "based upon the choice of law provision in the [p]lan, Pennsylvania law govern[ed]" the determination of whether the defendants "waived their right to enforce the [anti-assignment] provision through their continued course of conduct and dealings with" the plaintiff). Here, the parties do not directly address the choice-of-law question on waiver. But they rely on the laws of different states in framing their waiver arguments. Plaintiffs invoke *Premier Health* to argue Aetna waived the AAPs by "communicating directly with Plaintiffs, asserting that Plaintiffs had legal obligations to repay funds, and then withholding Plan B payments to Plaintiffs." (ECF No. 190 at 45–46 (citing *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204 (D.N.J. 2013); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, Civ. A. No. 11-425, 2012 WL 1135608, at *10 (D.N.J. Apr. 4, 2012)).) The two cited *Premier Health* opinions are among a series of court decisions that applied New Jersey law in the waiver determination. *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, Civ. A. No. 11-425, 2012 U.S. Dist. LEXIS 44878, at *26 (D.N.J. Mar. 30, 2012) (discussing waiver under "New Jersey contract law"). Aetna cites cases that applied the laws of several states (including New Jersey) in determining the waiver of AAPs. (ECF No. 184 at 42–43 (citing *Gilman v. Butzloff*, 22 So. 2d

263, 265 (Fla. 1945) (applying Florida law); *Emami v. Quinteles IMS*, Civ. A. No. 17-3069, 2017 U.S. Dist. LEXIS 154774, at *6 (D.N.J. Sept. 21, 2017) (applying New Jersey law); ECF No. 196 at 16 (citing *Medical Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, Civ. A. No. 16-5265, 2019 U.S. Dist. LEXIS 53097, at *34 (S.D.N.Y. Mar. 28, 2019) (applying New York law)).) Because the parities have not agreed on the choice of law issue, the Court must decide which state's law governs the waiver inquiry here.

"In construing matters of State law in pendent claims or in state law matters otherwise subsidiary to its federal question jurisdiction, a federal court . . . is duty-bound to apply the law of the state in which it sits." *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 400 (D.N.J. 1998) (quoting *Cooper v. Borough of Wenonah*, 977 F. Supp. 305, 311 (D.N.J. 1997)). Because the Court exercises federal question jurisdiction over this ERISA case (ECF No. 1 ¶ 12), which involves a waiver issue governed by state law, New Jersey choice of law rules should decide the governing law for the waiver inquiry. "New Jersey's choice of law analysis is a two step process." *Wiatt v. Winston & Strawn, LLP*, Civ. A. No. 10-6608, 2011 U.S. Dist. LEXIS 68827, at *16 (D.N.J. June 24, 2011). "First, a court must determine if an actual conflict in law exists among the states." *Id.* (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453 (N.J. 2008); *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006)). "Once it has been determined that a conflict exists, the court must determine which state has the 'most significant relationship' to the claim at issue." *Id.* (citing *Camp Jaycee*, 962 A.2d at 455). Here, "[b]ecause the parties do not dispute that there is no conflict of law between" New Jersey and other states as to the waiver of AAPs, "the Court will apply New Jersey law." *Id.* at *16–17 (resolving a dispute between the parties as to whether New York or New Jersey law should apply to the plaintiff's state law claims); *see also Cooper v. Samsung Elecs. Am., Inc.*, Civ. A. No. 07-3853, 2008 U.S. Dist.

23

LEXIS 75810, at *24 (D.N.J. Sept. 29, 2008) (citations omitted) ("As no conflict of laws is alleged to exist by the parties, this [c]ourt will apply forum law.").

"Waiver, under New Jersey law, involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." *Prospect Med., P.C. v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 3690-09T3, 2011 N.J. Super. Unpub. LEXIS 2255, at *9 (N.J. Super. Ct. App. Div. Aug. 19, 2011) (quoting *Shebar v. Sanyo Bus. Sys. Corp.*, 544 A.2d 377, 384 (N.J. 1988)). "[A]n anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct." *Id.* at *10 (quoting *Garden State Bldgs., L.P. v. First Fid. Bank, N.A.*, 702 A.2d 1315, 1322 (N.J. Super. Ct. App. Div. 1997), *certif. denied*, 707 A.2d 153 (N.J. 1998)). "Such waiver is basically a question of intention, and usually a matter for the trier of fact." *Garden State*, 702 A.2d at 1322–23 (citing *Sillman v. Twentieth Century-Fox Film Corp.*, 144 N.E.2d 387, 391 (N.Y. 1957)). Therefore, whether Aetna waived the AAPs involves "factual determinations that should not be made on a motion for summary judgment." *Prospect Med.*, 2011 N.J. Super. Unpub. LEXIS 2255, at *10 (quoting *Shebar*, 544 A.2d at 384).

Aetna asserts, and Plaintiffs do not dispute, that only four of all the Eight Claims—the Plan B claims for Member 80 (Offset 6), Member 81 (Offset 10), Member 80 (Offset 15), and Member 81 (Offset 42) (collectively, the "Remaining Claims")—are not affected by an AAP in the plan. (ECF No. 184 at 41; ECF No. 196-9.) For the rest of the Eight Claims, the Court is unable to determine whether Lutz has obtained a valid assignment from its patients, because whether the assignment is barred by an AAP is undecided at this stage.

In conclusion, NYCC has no ERISA standing to sue for its sole Plan B claim, which warrants summary judgment for Aetna. As for Lutz, the Court finds, and Aetna does not

24

challenge (*see* ECF No. 196-9), that Lutz has ERISA standing to sue for the Remaining Claims. As for the rest of Lutz's Plan B claims, the Court is unable to make a decision on Lutz's ERISA standing at this stage, which precludes summary judgment in either party's favor.

### 2.    Lutz Has Constitutional Standing

Aetna maintains Plaintiffs have not shown any of the Plan B members sustained a concrete injury. (ECF No. 184 at 31.) Aetna argues, even if Plaintiffs establish an injury, it cannot be clearly traced to any specific conduct of Aetna impacting the Plan Bs. (*Id.* at 33.) Plaintiffs counter they and their patients suffered an actual, concrete, particularized injury caused by Aetna, and that injury would be remedied by their requested relief. (ECF No. 190 at 32.) The Court agrees.

"Under Article III of the Constitution, a federal court may exercise jurisdiction only where there is an actual case or controversy to be decided." *1st Westco Corp. v. Sch. Dist. of Phila.*, 6 F.3d 108, 112–13 (3d Cir. 1993) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). "The standing doctrine defines what is a 'case' or 'controversy.'" *Long v. SEPTA*, 903 F.3d 312, 320–21 (3d Cir. 2018). "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Here, the parties dispute whether Plaintiffs meet the first and the second elements of Article III standing (*i.e.*, constitutional standing): whether Plaintiffs have demonstrated an actual injury, and whether that injury is fairly traceable to a challenged action of Aetna. The parties do not dispute, and the Court confirms, Plaintiffs meet the third element.

"[W]hen standing is called into question at the summary judgment stage . . . the plaintiff cannot rely on mere allegations but must set forth by affidavit or other evidence specific facts, Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.'" *Joint Stock Soc'y v. UDV N. Am., Inc.*, 266 F.3d 164, 175 (3d Cir. 2001) (citations and internal quotation marks omitted). Here, the Court finds Plaintiffs have set forth specific facts, if taken to be true, that establish the first and the second elements of constitutional standing.

### a.    Lutz Has Established an Actual Injury

Aetna argues many of Plaintiffs' Plan B claims are moot, because: (1) the amount of the Plan A overpayment is less than the payable amount of the Plan B claims withdrawn by Plaintiffs, which means the remaining Plan B claims related to the Plan A overpayment are moot, and (2) Lutz has received a payment, either in connection with or subsequent to, the overpayment determination on the Plan A claim. (ECF No. 184 at 32.) Aetna suggests Plaintiffs' alleged injuries are negated by the following facts: (1) each Plan B claim was allowed and the provider was given sufficient information to reconcile the offset to the overpaid claim; (2) Plaintiffs do not allege the Plan B allowances were incorrect; (3) Plaintiffs present no facts to dispute the validity of the overpayment; (4) Plaintiffs did not bill the Plan B members for the alleged offsets; and (5) Plaintiffs pursued payment only through the Plan A claim. (ECF No. 196 at 20.) Aetna states Plaintiffs also provide no evidence to establish constitutional standing based on any likelihood of future harm. (ECF No. 184 at 38.) Plaintiffs counter they and their patients have suffered a cognizable Article III injury caused by Aetna's denial of Plan B benefits, which violated their legal rights under ERISA and Plan Bs' terms, and the Plan A overpayments are irrelevant to identifying such an injury. (ECF No. 190 at 32.) Plaintiffs stress a provider has standing to assert ERISA claims for the withheld benefits, whether or not its patients suffered

26

financial injury or were directly billed for the provider's services. (*Id.* at 33.) As to the withdrawn Plan B claims, Plaintiffs explain they have not reallocated the value of the excluded cross-plan offsets to those pursued in their motion for summary judgment, and the withdrawal is irrelevant to Aetna's ERISA liability. (*Id.* at 34 & n.23.) The Court agrees.

"'ERISA's goal of deterring fiduciary misdeeds' supports a 'broad view of participant standing under ERISA.'" *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 456 (3d Cir. 2003) (quoting *Fin. Inst. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d 142, 149 (2d Cir. 1992)). A plan administrator's "failure to pay benefits allegedly due for services rendered by the [p]roviders imposes an actual or imminent, not conjectural or hypothetical, injury on [the insured patient] for the unpaid balance due." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4599, 2018 U.S. Dist. LEXIS 186320, at \*17 (D.N.J. Oct. 31, 2018) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see also Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) ("[P]lan participants are injured . . . when a plan administrator fails to pay a healthcare provider in accordance with the terms of their benefits plan . . . even if the benefits are assigned to a third party."). Here, for the purpose of constitutional standing, Lutz has alleged Aetna's denial of Plan B benefits due for services rendered by Lutz under Plan Bs' terms, which must be taken as true at this stage. Lutz has presented the PEOBs issued by Aetna to show Aetna withheld benefits due under Plan Bs. (ECF No. 190 at 11–12.) This alleged denial constitutes an actual injury to the Plan B members.

Because Plaintiffs' "patients (who assigned their benefits to [Lutz]) indeed suffered an injury sufficient to give rise to standing," Plaintiffs' Complaint has "sufficiently allege[d] injury to [Lutz] as [an] assignee[] of benefits" with respect to the Remaining Claims. *Edwards v. Horizon Blue Cross Blue Shield of N.J.*, Civ. A. No. 08-6160, 2012 U.S. Dist. LEXIS 105266, at

27

*18–20 (D.N.J. June 4, 2012); *see also Aetna UCR*, 2015 U.S. Dist. LEXIS 84600, at *36–37 (quoting *CardioNet*, 751 F.3d at 178) ("When a provider obtains a valid assignment from an ERISA plan member, the provider is deemed to 'stand in the shoes' of the member with respect to the benefits owed and may pursue those benefits in an action against the insurer under Section 502(a)(1)(B)."); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014) ("[A]n assignee has the same injury as its assignor for purposes of Article III."). Even if Lutz, as an out of network provider, "may not experience future injuries from" Aetna, it is "bringing . . . claims as [an] assignee[] of [its] patients, who remain [Plan B] members and may very well suffer injuries from [Aetna] in the future." *Premier Health*, 292 F.R.D. at 216 (citing *Premier Health*, 2012 U.S. Dist. LEXIS 44878, at *39). That is to say, Lutz has also "show[n] [a] risk of future injury" for the purpose of constitutional standing. *Id*.

Aetna's attempts to negate Plaintiffs' injury are unavailing. First, because the injury was allegedly caused by Aetna's violation of Plan Bs' terms, it may exist independently of Plan A, not to mention the Plan A overpayments. Second, Aetna's allegation that it did not withhold Plan B payments is irrelevant, because the allegation "goes to the merits, not standing." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 194 (5th Cir. 2015) (declining, in determining the plaintiff provider's constitutional standing in an ERISA case, to consider the defendant plan administrator's argument that it had "covered the patients' claims"). Third, "[t]he fact that [the provider] did not bill [patients] for the amount that it believe[d] it was underpaid does not" negate the provider's injury of being "underpaid under the terms of the health plan." *DaVita, Inc. v. Marietta Mem. Hosp. Emple. Health Ben. Plan*, 978 F.3d 326, 341 n.8 (6th Cir. 2020) (citations omitted); *see also N. Cypress*, 781 F.3d at 194 (rejecting the defendant plan administrator's argument that the plaintiff provider had "no Article III injury in the absence of a

28

threat that patients w[ould] be billed"); *In re Wellpoint Out-Of-Network "UCR" Rates Litig.*, 865 F. Supp. 2d 1002, 1042 (C.D. Cal. 2011) (citing *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1081 (9th Cir. 2000)) ("[H]ealthcare providers with valid assignments are not required to bill the patient when seeking a claim against a defendant.").

Accordingly, Lutz has demonstrated an Article III injury.

### b.      Lutz Has Satisfied the Traceability Requirement

Aetna maintains Plaintiffs' alleged injury cannot be clearly traced to any specific conduct of Aetna that impacts Plan Bs, because each overpayment recovery is (1) an independent transaction from any benefit payable for a different plan member and (2) a denial of the Plan A member's benefit but not that for a Plan B member whose claim was allowed. (ECF No. 184 at 33.) Aetna asserts the only common element between the Plan A and the Plan B transactions is that both took place in the same bank account that Aetna funded with its own general assets. (*Id.*) Plaintiffs insist, even if Aetna issued PEOBs that did not identify how much benefit was taken from each listed Plan B claim, it does not negate Plaintiffs' injury, because some portion of the benefits from each Plan B was taken. (ECF No. 190 at 34.) The Court agrees.

The second element of constitutional standing "requires the alleged injury to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," which "is akin to but for causation in tort and may be satisfied even where the conduct in question might not have been a proximate cause of the harm." *Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016) (citations and internal quotation marks omitted). "A plaintiff need not prove causation with absolute scientific rigor to defeat a motion for summary judgment." *Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals*, 913 F.2d 64, 72 (3d Cir. 1990). Here, the PEOBs issued by Aetna show that Aetna withheld

29

benefits due under Plan Bs. (ECF No. 190 at 11–12.) But for Aetna's accused conduct of withholding payment, Lutz could not have sustained its alleged injury. Therefore, Lutz meets the traceability requirement.

To establish constitutional standing, Lutz need not further characterize Aetna's accused conduct as cross-plan offsetting or match a Plan A overpayment to a specific Plan B claim. After all, "if a provider 'has alleged it is an assignee of the [p]atient and that the insurer failed to fulfill its contractual obligations to the [p]atient; this is all that is required to demonstrate Article III standing.'" *N. Cypress*, 781 F.3d at 193 (quoting *Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, Civ. A. No. 10-7427, 2010 U.S. Dist. LEXIS 141812, 2011 WL 803097, at *4 (S.D.N.Y. Feb. 18, 2011)); *see also Conn. v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002) (citing *I.V. Servs. of Am., Inc. v. Trs. of Am. Consulting Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 n.2 (2d Cir. 1998)) (concluding that "a healthcare provider that spen[t] money on behalf of a patient for drugs and in return receive[d] an assignment of the patient's rights to reimbursement under the healthcare plan ha[d] [ERISA] standing as assignee" and constitutional standing "in a lawsuit under ERISA against the plan that refused the reimbursement").

Accordingly, the Court finds Lutz has established constitutional standing.

### C.      Plaintiffs' ERISA Claims

#### 1.      Aetna Is Entitled to Summary Judgment on the Plan B Claims Not Included in Plaintiffs' Motion for Summary Judgment

Plaintiffs state, in filing the current motion, they are seeking judgment for only a subset of all of the alleged cross-plan offsets taken by Aetna against Plaintiffs. (ECF No. 180 at 15 n.2.) Plaintiffs reserve the right to pursue relief for the rest of the alleged offsets, if the Court re-opens discovery in response to a Rule 56(d) request from Aetna. (*Id.*) Plaintiffs explain, in computing

the total amount of benefit offset, they excluded certain cross-plan offsets not at issue, including those related to a non-ERISA Plan B. (ECF No. 190-2 at 3–4.) Plaintiffs do not oppose a dismissal as to the Plan B claims Plaintiffs have chosen not to include in their summary judgment motion (the "Withdrawn Claims"). (ECF No. 190 at 58 n.40.) Aetna suggests Plaintiffs, after having litigated this case for seven years and filed a motion for summary judgment when discovery was not yet complete, should be deemed to have abandoned suing for the Withdrawn Claims. (ECF No. 184 at 29.) Aetna contends summary judgment should be entered in its favor as to the Withdrawn Claims. (ECF No. 196 at 11.) The Court agrees.

After prolonged discovery and Aetna's filing of a cross motion for summary judgment, Plaintiffs choose not to seek a summary judgment for the Withdrawn Claims. The Court may deem Plaintiffs have waived or abandoned the right to sue for the Withdrawn Claims. *See Taylor v. Tex. S. Univ.*, Civ. A. No. 17-1522, 2018 U.S. Dist. LEXIS 220011, at *6 n.2 (S.D. Tex. Dec. 26, 2018) (citing *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)) ("[A] claim or issue raised in a pleading but ignored on summary judgment may be considered waived and/or abandoned."); *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue [a] claim beyond [the plaintiff's] complaint constituted abandonment."); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived."). Merely granting a dismissal without prejudice as to the Withdrawn Claims could be prejudicial to Aetna; instead, granting a dismissal with prejudice or a summary judgment in its favor is more appropriate. *See McDermott v. Waukesha Cty.*, Civ. A. No. 15-1341, 2018 U.S. Dist. LEXIS 90442, at *11 n.4 (E.D. Wis. May 31, 2018) (citing *Ratkovich By & Through Ratkovich v. Smith Kline*, 951 F.2d 155, 158 (7th Cir. 1991)) (dismissing the plaintiff's withdrawn claims with prejudice, because "[t]he

31

defendants have invested significant time and resources in discovery, mediation, and summary judgment briefing, including moving for summary judgment on the claims [the plaintiff] now seeks to withdraw; dismissal without prejudice at this stage would be unfair to the defendants").

Even if Plaintiffs' handling of the Withdrawn Claims has not yet amounted to abandonment, their "failure to respond to" Aetna's argument that Plaintiffs abandoned the Withdrawn Claims "constitutes an abandonment of" the Withdrawn Claims, "and essentially acts as a waiver of these issues.'" *Brenner v. Twp. of Moorestown*, Civ. A. No. 09-219, 2011 U.S. Dist. LEXIS 52760, at *34 (D.N.J. May 17, 2011) (quoting *Skirpan v. Pinnacle Health Hosps.*, Civ. A. No. 07-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010)); *see also Franco v. Conn. Gen. Life Ins. Co.*, Civ. A. No. 07-6039, 2014 U.S. Dist. LEXIS 85595, at *10 n.3 (D.N.J. June 24, 2014) (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Graham v. Blair*, Civ. A. Nos. 10-772, 10-780, 2011 U.S. Dist. LEXIS 149225, at *12–13 (S.D. Ill. Dec. 28, 2011) (treating the plaintiff's failure to respond to the defendant's argument that the plaintiff abandoned its claim "as an admission of the defendants' abandonment argument"). Because Plaintiffs "have now abandoned" suing for the Withdrawn Claims, a summary judgment for Aetna on the Withdrawn Claims "is warranted." *Franco*, 2014 U.S. Dist. LEXIS 85595, at *11 n.3; *see also Graham*, 2011 U.S. Dist. LEXIS 149225, at *13 (granting summary judgment for the defendant on a claim abandoned by the plaintiff).

Aetna presents its version of the Withdrawn Claims in its Exhibit 35 (ECF No. 196-18), which is consistent with Plaintiffs' Exhibit 31 (ECF No. 190-3), where Plaintiffs identify all the excluded Plan B claims in shaded cells. Therefore, the Court confirms both exhibits define the

scope of the Withdrawn Claims, for which Aetna is entitled to summary judgment.

### 2.   Aetna Conducted Cross-Plan Offsetting

Aetna states all the Plan B members had their claims covered and received all benefits due. (ECF No. 184 at 53.) Aetna contends Plaintiffs cannot prove their Plan B claims were not paid, because Plaintiffs do not dispute the merits of Aetna's overpayment decisions, and offsetting debt constituted payment for Plaintiffs' services. (*Id.* at 54–55.) Aetna asserts each paid claim or overpayment recovery constituted a separate transaction, and no funds were transferred between different plans. (*Id.* at 57.) Aetna explains any offset was applied to and net from the overall payment, which Aetna made to the provider from a pooled bank account. (ECF No. 196 at 24.) Aetna states, when the pooled account was used for administrative convenience, it was the accounting to each plan that satisfied Aetna's fiduciary duties and ensured each plan paid any benefits due. (*Id.*) Plaintiffs maintain Aetna did not pay Plaintiffs the Plan B benefits they were entitled to, and diverted all or part of the benefits to recover for a prior Plan A overpayment. (ECF No. 180 at 14–15.) Plaintiffs view Aetna's use of a pooled bank account as merely an administrative procedure, which cannot negate cross-plan offsets or alter Aetna's legal obligations as an ERISA fiduciary. (ECF No. 190 at 23–24.) The Court agrees.

Cross-plan offsetting refers to "the practice of not paying a benefit due under one plan in order to recover an amount believed to be owed to another plan because of that other plan's overpayment." *Peterson*, 913 F.3d at 776. A typical cross-plan offsetting proceeds as follows. "[O]ut-of-network providers . . . provided services to . . . a patient who was insured under a Plan A administered by" a plan administrator. *Peterson v. UnitedHealth Grp., Inc.*, 242 F. Supp. 3d 834, 838 (D. Minn. 2017), *aff'd*, 913 F.3d 769 (8th Cir. 2019). The "providers submitted claims to" the plan administrator and "received payment for those claims from the Plan A." *Id.* The

providers "were later informed by [the plan administrator] that they had been paid too much," but the providers "refused to return the alleged overpayment." *Id.* The plan administrator "responded by recouping the disputed overpayment through cross-plan offsetting." *Id.* "In other words, when [the plan administrator] learned that [the providers] had submitted a subsequent claim regarding  . . . a different patient who was insured under  . . . a Plan B," the plan administrator "did not pay for those claims by transferring money to" the providers. *Id.* "Instead, [the plan administrator] purported to pay for those claims by cancelling debt that [the providers] allegedly owed to the Plan A." *Id.*

This is exactly what happened here between Plaintiffs and Aetna. It is undisputed that the PEOBs in question indicate Aetna withheld benefit payment under Plan B and applied the money toward a purported prior overpayment under Plan A. The cross-plan offsetting described in *Peterson* did not require a transfer of actual money between Plan A and Plan B, and could proceed whether or not the plan administrator uses a pooled account for different plans. Each paid claim and each overpayment recovery are not completely separate transactions, due to the causal relationship between the debt cancellation for Plan A and the benefit withholding with Plan B. Accordingly, the Court finds Aetna conducted cross-plan offsetting, with respect to all the Plan B claims in question.

### 3. Aetna's Cross-Plan Offsetting Is Unlawful

#### a. Aetna's Cross-Plan Offsetting Violates ERISA

Plaintiffs maintain, as the assignees of their patients, they have a right to have their plans administered in accordance with ERISA. (ECF No. 190 at 32 n.21.) Plaintiffs contend Aetna's cross-plan offsetting constitutes a *per se* violation of ERISA's duty of loyalty and prohibited transaction rule. (ECF No. 180 at 33.) Plaintiffs assert the terms of Plan B only authorize an

34

offset in lieu of payment when a plan seeks to recover the overpayment previously made under the same plan (*i.e.*, via a "same-plan" or "same-member" offset), but not cross-plan offsets. (*Id.* at 25.) Plaintiffs maintain Lutz's "Physician Group Agreement" (the "PGA") with Beech Street Corporation ("Beech")[5] cannot alter Aetna's obligations as a fiduciary administrator under ERISA, and Aetna cannot enforce its confidential Network Rental Agreement ("NRA")[6] with Beech against Lutz, which is not a party to the NRA and has no contractual relationship with Aetna. (ECF No. 190 at 21, 28–30.) Aetna counters it has broad discretion to administer an ERISA plan, and its administrative decisions are to be reviewed under an arbitrary and capricious standard. (ECF No. 184 at 58.) Aetna insists the broad plan language permits Aetna's provider-level offsets without qualification, and without limitation to the same plan. (*Id.* at 59.) Aetna adds the NRA and the PGA also allow cross-plan offsetting, and are enforceable against Lutz. (*Id.* at 64–66; ECF No. 196 at 27–28.) Aetna claims ERISA does not extend to overpayment determinations against providers for services rendered on an in-network basis, because the payment for those services is determined by the contract between the payer and the provider, not the patient's ERISA plan; Aetna suggests such a rule should apply to Lutz because of its participation in the Beech Network, which shares the hallmarks of an in network agreement, *i.e.*, the right to recover overpayments and the prohibition on billing the member. (ECF No. 196 at 24–25.) Aetna indicates Plaintiffs, having benefited from the access to negotiated rates and direct payment rights under the Beech Network, should not disavow the accompanying

---

[5] Beech is a company that contracts with out-of-network providers to offer a supplemental network (the "Beech Network") to plans and insurers. (ECF No. 184-4 at 2; ECF No. 190 at 27.) Under the PGA, Lutz became a participating provider with the Beech Network and agreed to accept negotiated rates for treatment of patients insured by Beech's contracting partners. (ECF No. 190 at 28; ECF No. 190-1 at 39.)

[6] Aetna alleges the NRA gave Aetna the right to access the Beech Network. (ECF No. 184-4 at 2.)

detriments, including the obligation to cooperate with Aetna's policies. (*Id.* at 25.) The Court disagrees.

As a threshold matter, the issue here is not the correctness of Aetna's overpayment determinations, but whether Aetna breached its fiduciary duty as a plan administrator. Under ERISA, a plan administrator must act as a "trustee-like fiduciary" in "manag[ing] the plan." *CIGNA Corp. v. Amara*, 563 U.S. 421, 437 (2011). ERISA governs Aetna's fiduciary duty with respect to Plan B, even though Plaintiffs, as out-of-network providers, seek to be paid at negotiated rates under the Beech Network. *See Univ. Spine Ctr. v. Aetna Inc.*, Civ. A. No. 17-8160, 2018 U.S. Dist. LEXIS 62746, at *1–2, 17 (D.N.J. Mar. 20, 2018) (allowing the plaintiff out-of-network provider, "as assignee of a patient," to seek "to be reimbursed at (or at least closer to) in-network rates," to pursue an ERISA action against "the claims administrator for the health plan of [that] patient" for its alleged "failure to make all payments pursuant to the member's plan under ERISA" and "breach of fiduciary duty under ERISA").

When a plan administrator "happen[s] to be fiduciaries of multiple plans . . . 'each plan is a separate entity' and a fiduciary's duties run separately to each plan." *Peterson*, 913 F.3d at 776 (quoting *Standard Ins. Co. v. Saklad*, 127 F.3d 1179, 1181 (9th Cir. 1997)); *see also Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 316 (4th Cir. 2001) (holding that a fiduciary's duty to a plan "must be undivided" under ERISA). Therefore, Aetna must fulfill its fiduciary duty with respect to each Plan B in accordance with ERISA. This calls into question the practice of cross-plan offsetting. *See Peterson*, 913 F.3d at 776 ("[T]he practice of cross-plan offsetting is in some tension with the requirements of ERISA."); *Saklad*, 127 F.3d at 1182 ("An ERISA fiduciary cannot refuse to pay a beneficiary of a plan by using a setoff from a wholly separate source of debt, be that an ordinary debt or a debt to a wholly separate ERISA plan."). Here, the Court finds

36

Aetna's cross-plan offsetting violates Section 406(b)(2) and Section 404(a) of ERISA.

Section 406(b)(2) of ERISA prohibits a plan's fiduciary, "in his individual or in any other capacity," from "act[ing] in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries," 29 U.S.C. § 1106(b)(2), unless the Secretary of the Treasury grants a Section 408 "exemption of any fiduciary or transaction . . . from all or part of the restrictions imposed by" Section 406(b). 29 U.S.C. § 1108(a). The Third Circuit has found Section 406(b)(2) "creates a per se prohibition of a transfer between two funds where the trustees are identical but the participants and beneficiaries are not." *Cutaiar v. Marshall*, 590 F.2d 523, 531 (3d Cir. 1979). Here, Aetna, as an ERISA plan administrator, acts as the fiduciary for both Plan A and Plan B, whose participants and beneficiaries are not identical. By "failing to pay a benefit owed to a beneficiary under one plan in order to recover money for the benefit of another plan," the practice of cross-plan offsetting "may constitute a transfer of money from one plan to another." *Peterson*, 913 F.3d at 777. Accordingly, with nothing in the record suggesting an applicable Section 408 exemption, Aetna's cross-plan offsetting violates Section 406(b)(2).[7]

Aetna's use of a pooled bank account for paying claims and seeking reimbursement supports the applicability of Section 406(b)(2). This is because it makes the interests of Plan A adverse to those of Plan B: when Aetna extracts funds from the account to pay for a Plan A

---

[7] The "transfer of money" in cross-plan offsetting could also be seen as a mere legal fiction. *See Small Bus. Loan Source, Inc. v. F/V Miss Kaitlin*, Civ. A. No. 04-683, 2004 U.S. Dist. LEXIS 18016, at *5 (E.D. La. Sept. 7, 2004) (citations and internal quotation marks omitted) (finding that "the transfer of funds" in a transaction was "a legal fiction," when "the transaction . . . was not the sale of the vessel for an amount of money, but the cancellation of a debt owed in exchange for the property," because "instead of accepting cash in satisfaction of the mortgagor's debt, the purchasing mortgagee agrees to offset that debt by receipt of the property itself"). Even if Aetna's cross-plan offsetting does not involve a transfer of money that triggers Section 406(b)(2), it still constitutes a Section 406(b)(2) violation, as illustrated below.

claim, the amount of funds in the account available to pay for a Plan B claim decreases. *See Solis v. Hartmann*, Civ. A. No. 10-123, 2012 U.S. Dist. LEXIS 124289, at *20 (N.D. Ill. Aug. 31, 2012) (citations omitted) (finding that under Section 406(b)(2) "[a] party's adverse interests need not be antithetical, but only different"); *Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996) (citing *Sandoval v. Simmons*, 622 F. Supp. 1174, 1213 (C.D. Ill. 1985)) ("To be adverse within the meaning of the ERISA, the interests need not directly conflict but must be sufficiently different."). As a result, Aetna's cross-plan offsetting, by allowing Plan A to recoup its prior overpayment by reducing the payment of actual funds under Plan B, entails "a transaction involving [Plan B] on behalf of a party," *i.e.*, Plan A,[8] "whose interests are adverse to the interests of" Plan B. 29 U.S.C. § 1106(b)(2). Therefore, Section 406(b)(2) is violated.

Also, Aetna's cross-plan offsetting implicates Section 404(a), which provides "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). Aetna admits its offsetting of debts under Plan A claim "constitutes payment for services" rendered pursuant to Plan B. (ECF No. 184 at 54.) In other words, while undertaking the offsetting, Aetna is discharging its duty of benefit payment under Plan B, which should be done for the exclusive purpose of serving the interests of the Plan B participants and beneficiaries. However, such an offsetting serves another purpose unrelated to Plan B, *i.e.*, recovering overpayments made under Plan A. Therefore, Aetna's practice of cross-plan offsetting violates Section 404(a). *See Peterson*, 913 F.3d at 777 (citing 29 U.S.C. §

---

[8] The term "party" in Section 406(b)(2) could be a benefit plan. *See Cutaiar*, 590 F.2d at 529 (endorsing the Department of Labor's finding of a Section 406(b)(2) violation, in which the Department of Labor considered a "welfare plan" as a "party" under Section 406(b)(2)).

1104(a)(1)) (finding that cross-plan offsetting may be "in violation of ERISA's 'exclusive purpose' requirement").

Finally, even if Plan A, Plan B, the PGA, and the NRA permit cross-plan offsetting, they cannot circumvent ERISA requirements. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 422 (2014)) (quoting *Cent. States, Se. & Sw. Areas Pension Fund*, 472 U.S. 559, 568 (1985)) ("[T]rust documents cannot excuse trustees from their duties under ERISA."); *see also In re SunTrust Banks, Inc. ERISA Litig.*, 749 F. Supp. 2d 1365, 1374 n.11 (N.D. Ga. 2010) (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1457 (6th Cir. 1995)) ("[A] fiduciary may only follow plan terms to the extent that the terms are consistent with ERISA."); *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("The [p]lan cannot avoid that which is dictated by the terms of ERISA."); *La Barbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 136 (2d Cir. 2003) ("ERISA of course trumps the collective bargaining and [t]rust agreements in the case of a conflict."). In conclusion, Aetna's cross-plan offsetting is prohibited by ERISA.[9]

   **b.**  **ERISA Overrides Aetna's State Law Justifications for Its Cross-Plan Offsetting**

Plaintiffs argue ERISA preempts the state laws alleged by Aetna to authorize cross-plan offsetting; even if the state laws are not preempted, they do not apply to the self-insured plans. (ECF No. 190 at 30–31.) Aetna maintains applicable state laws justify Aetna's interpretation of its broad discretionary duties under an ERISA plan and allow offsetting from a provider's future claims payments after giving notice, with an expectation that the provider will adjust its records for the Plan A member to reflect a reversed payment. (ECF No. 184 at 67.) Aetna suggests

---

[9] The Court is not taking a broad position that cross-plan offsetting is a *per se* violation of ERISA. The decision here is limited to Aetna's case, where certain circumstances related to cross-plan offsetting may not be shared in other cases. For example, in Aetna's case, the participants and the beneficiaries are not identical between Plan A and Plan B.

Plaintiffs' preemption argument is belied by Lutz's previous contradictory positions in another case and certain communications with Aetna. (ECF No. 196 at 29.) The Court disagrees.

The Court accepts without scrutinizing Plaintiffs' argument that ERISA preempts the state laws alleged by Aetna to authorize cross-plan offsetting. This is because Aetna's only response to this preemption argument is that Lutz's certain past positions somehow prevent Plaintiffs from raising the preemption argument. Aetna fails to address the substance of Plaintiffs' argument, *i.e.*, ERISA as a matter of law preempts the state laws that may permit cross-plan offsetting. As a result, Aetna has waived its right to respond to this substantive legal issue. *Tripodi v. Universal N. Am. Ins. Co.*, Civ. A. No. 12-1828, 2013 U.S. Dist. LEXIS 181807, at *14 n.4 (D.N.J. Dec. 31, 2013) (quoting *Skirpan v. Pinnacle Health Hosps.*, Civ. A. No. 07-1730, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010)) ("[F]ailure to respond to arguments raised on summary judgment . . . essentially acts as a waiver of these issues."); *see also Lawlor v. ESPN Scouts, LLC*, Civ. A. No. 10-5886, 2011 U.S. Dist. LEXIS 15775, at *5 (D.N.J. Feb. 16, 2011) (citations omitted) ("Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant."); *Duran v. Equifirst Corp.*, No. 09-3856, 2010 U.S. Dist. LEXIS 22904, at *7 (D.N.J. Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed." ).

Also, Aetna cannot prevent Plaintiffs from raising the preemption argument. Aetna claims Lutz, in an earlier case, took a position that contradicts its preemption argument here. (ECF No. 196 at 29 (citing *Lutz Surgical v. BCBS of Fla. ("LS")*, Civ. A. No. 17-2157, 2017 U.S. Dist. LEXIS 230623, at *3, *6–8 (S.D. Fla. Dec. 14, 2017)).) Aetna also alleges Lutz previously invoked state laws to seek certain payments and damages from Aetna. (*Id.*) However,

40

Aetna offers no legal authority that explains why these alleged past positions of Lutz, even if contradictory to Lutz's current preemption argument, are relevant to the Court's preemption analysis. Therefore, the Court need not consider these positions. *See Graceway Pharms., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 571 (D.N.J. 2010) (citation omitted) ("[The defendant] argues that [the plaintiff] has taken inconsistent positions in [the past on the subject matter of the case]. [The defendant's] position—apparently akin to judicial estoppel—comes absent any supporting legal authority. Arguments absent substantial development are waived."); *see also In re Terry*, 505 B.R. 660, 665 n.3 (Bankr. E.D. Pa. 2014) (citing *Glidepath Holding v. Spherion Corp.*, 590 F.Supp.2d 435, 459 n.9 (S.D.N.Y. 2007)) ("[A] court is under no obligation to consider arguments unsupported by citation to legal authority.").

Even if the Court assumes Aetna properly invoked the doctrine of judicial estoppel, which may be implicated here, it cannot preclude Plaintiffs' preemption argument. Judicial estoppel is triggered "where the party changing its position benefitted from the assertion of its prior contradictory position." *Armco, Inc. v. Glenfed Fin. Corp.*, 746 F. Supp. 1249, 1257 (D.N.J. 1990). "Judicial estoppel . . . generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase," and "is sometimes applied where a party takes a position in one case and later takes a contradictory position in another case." *Otoe-Missouria Tribe of Okla. v. U.S. HUD*, Civ. A. No. 08-1297, 2014 U.S. Dist. LEXIS 94768, at *18 (W.D. Okla. Feb. 13, 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see also Georgacarakos v. Wiley*, Civ. A. No. 07-1712, 2008 U.S. Dist. LEXIS 69144, at *16 (D. Colo. Sept. 12, 2008) (citing *Zedner v. United States*, 547 U.S. 489, 504 (2006)) ("Judicial estoppel is an equitable doctrine that is invoked to prevent a party from prevailing in one case on an argument and then relying on a contradictory argument

to prevail in another case.").

Here, Lutz did not take a position in *LS* that contradicts with its current preemption argument. In *LS*, Lutz, as an out-of-network provider, asserted a state law claim against the defendant plan fiduciary, alleging the defendant "underpaid the amount [Lutz was] owed under the [state law] for the covered emergency services rendered." *LS*, 2017 U.S. Dist. LEXIS 230623, at *3. The *LS* defendant "maintain[ed] that the claim [wa]s completely preempted by ERISA." *Id.* at *3–4. Apparently, Lutz's position in *LS* was that, as a provider, its state law claim against the plan fiduciary was not preempted under ERISA. In contrast, Lutz's position here is that, as a plan fiduciary, Aetna's state law defenses to Lutz's ERISA claims are preempted. Therefore, on their face, the two positions of Lutz do not contradict with each other.

Moreover, at a more substantive level, Lutz's position in *LS* does not contradict with its current position. The *LS* court applied the *Davila* test and found Lutz's state law claim was not preempted. *Id.* at *5. The *Davila* test is a "two-part test" that determines whether "[a] claim is completely preempted" by ERISA. *Id.* (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)). However, the *Davila* test is inapplicable here, where the preemption issue is whether Aetna's state law defenses to Lutz's ERISA claims are preempted. In other words, the preemption inquiry here, which the Court declines to undertake, would be a different one from that in *LS*. Therefore, Lutz's position in *LS* could not contradict with its current preemption argument.

Even if the Court construes Aetna's state law defenses as potential state law claims and applies the *Davila* test, the *Davila* analysis here would be different from that in *LS*: the preemption question here would be whether a plan fiduciary may bring certain state law claims against a provider, while the question in *LS* was whether a provider may bring certain state law

42

claims against a plan fiduciary. The *Davila* test asks, *inter alia*, whether "the plaintiff has standing to sue under ERISA" and whether "independent legal duty . . . is implicated by a defendant's actions." *Id.* (citations omitted). Because a provider and a plan fiduciary face different issues with respect to ERISA standing and ERISA-independent legal duties, the *Davila* analysis in *LS* could not resemble a potential one here. In other words, Lutz's position in *LS* could not contradict its current preemption argument.

Similarly, even if Lutz previously invoked state laws to seek payments or damages from Aetna, it could at best be characterized as a position that Lutz as a provider might pursue certain state law claims against Aetna, which does not contradict with Lutz's current preemption argument, *i.e.*, Aetna could not assert certain state law defenses to Lutz's ERISA claims.

In conclusion, Lutz is not precluded from arguing Aetna's state-law-based justifications for its cross-plan offsetting are preempted, and the Court accepts Lutz's preemption argument.

### 4.    A *Pro Rata* Calculation of Benefits Due Is Proper

Plaintiffs propose, where less than 100% of the Plan B benefits identified on a PEOB were offset by Aetna, who did not allocate the offsets in any way, the only principled way to determine the amounts paid/withheld for each Plan B is to apportion the offset amounts *pro rata* across the impacted Plan Bs; there is no justification to realign the offsets to same plan/member so as to retroactively create same-plan offsets. (ECF No. 190 at 12, 25 (citing *SEC v. Loewenson*, 290 F.3d 80, 89 (2d Cir. 2002)).) Aetna considers Plaintiffs' theory of *pro rata* damages a fiction, stating it is pure speculation that the offset impacted each Plan B on the PEOB equally. (ECF No. 196 at 22–23.) Aetna requests a remedy of realigning the offsets to the same plan or member. (ECF No. 184 at 70.) The Court disagrees.

"ERISA § 502(a)(1)(B) authorizes a plan participant to bring suit 'to recover benefits due

43

to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (quoting 29 U.S.C. § 1132(a)(1)(B)). "ERISA grants the court wide discretion in fashioning legal and equitable relief to make the plan whole and protect the rights of the beneficiaries." *Gilliam v. Edwards*, 492 F. Supp. 1255, 1266–67 (D.N.J. 1980) (citations omitted); *see also Levine v. Life Ins. Co. of N. Am.*, 182 F. Supp. 3d 250, 266 (E.D. Pa. 2016) (citing *Carney v. Int'l Bhd. of Elec. Workers Loc. Union 98 Pension Fund*, 66 F. App'x 381, 385–87 (3d Cir. 2003)) ("In an ERISA benefits case, a court has discretion in fashioning a remedy.")

The Court supports Plaintiffs' proposal to calculate their benefits due on a *pro rata* basis, when less than 100% of the Plan B benefits identified on a PEOB were taken to fund cross-plan offset. "Courts have favored *pro rata* distribution of assets [for recovery] where . . . the funds of the defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders." *Loewenson*, 290 F.3d at 88–89 (citations omitted). *Loewenson* is instructive here: the Plan B members were similarly situated in that the withholding of their benefits due all resulted from Aetna's cross-plan offsetting, and the withheld benefits were commingled in Aetna's pooled bank account. Therefore, a *pro rata* calculation of Plaintiffs' benefits due is proper.

Aetna has no basis to challenge this *pro rata* calculation. As a breaching fiduciary, Aetna bears the burden of ascertaining the extent of injury it has caused to Plan B. *In re Unisys Corp. Retiree Med. Benefits Litig.*, MDL No. 969, 2000 U.S. Dist. LEXIS 22347, at *14 (E.D. Pa. Apr. 25, 2000) (citing *Leigh v. Engle*, 727 F.2d 113, 137–38 (7th Cir. 1984)) ("[O]nce a plaintiff has established breach and resulting harm, the breaching fiduciary has the burden of resolving any

44

uncertainty pertaining to the extent of that harm."); *see also Sec'y of U.S. Dep't of Labor v. Gilley*, 290 F.3d 827, 830 (6th Cir. 2002) (citations omitted) (finding that "in measuring a loss" in an ERISA action, "the burden of persuasion should be placed on the breaching fiduciary"). Aetna has not met this burden, because nothing in the record shows how Aetna allocated the offset among different Plan Bs. As a result, any ambiguity in determining the amount of benefits due to Lutz should be resolved against Aetna. *Chesemore v. All. Holdings, Inc.*, 948 F. Supp. 2d 928, 940 (W.D. Wis. 2013) (citations omitted) ("Although a plaintiff must prove by a preponderance of the evidence that [the defendant ERISA] fiduciary breaches caused harm to the plan, any doubt or ambiguity in estimating the extent of that loss should be resolved against the breaching fiduciary that caused the uncertainty."); *see also Gilley*, 290 F.3d at 830 ("[T]o the extent that there is any ambiguity in determining the amount of loss in an ERISA action, the uncertainty should be resolved against the breaching fiduciary."); *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001) (citing *Kim v. Fujikawa*, 871 F.2d 1427, 1430–31 (9th Cir. 1989)) (concluding that "[i]n determining the amount that a breaching fiduciary must restore to the [f]unds as a result of a prohibited transaction, the court should resolve doubts in favor of the plaintiffs," in order to "avoid the . . . unfair result[] of . . . depriving the plaintiffs of any recovery simply because the defendants have made it difficult to disentangle the prohibited transaction"). Therefore, Lutz is under no obligation to prove the offset impacted each Plan B member on a PEOB equally. Aetna's failure to refute this *pro rata* model with specific evidence results in an ambiguity in damages calculation to its disadvantage and forecloses its request to retroactively realign the offsets to the same plan or member.

Accordingly, the Court grants summary judgment for Plaintiffs as to the Remaining Claims. The parties should file a joint status report within 30 days apprising the Court of what

further determinations need to be made before a judgment can be entered for Plaintiffs on Count I and Count II (*e.g.*, the amount of damages Lutz should recover).

### D.    Aetna's Counterclaims

#### 1.    Aetna's State Law Counterclaims Are Preempted

Aetna maintains the Plan A overpayments are a sum certain debt that Lutz owes to Aetna, because the PGA and the NRA permit a setoff and provide a mechanism for account reconciliation, which includes a time limit for disputing payment issues, and Lutz has passed that time limit. (ECF No. 184 at 69; ECF No. 196 at 31.) Aetna explains its counterclaims seek a setoff of the established overpayment amounts against any monetary relief the Court grants to Plaintiffs, but do not seek to litigate each of the Plan A overpayments. (ECF No. 184 at 69–70.) Plaintiffs counter Aetna's state law counterclaims cannot reverse or negate Aetna's liability under ERISA, and are preempted by ERISA. (ECF No. 180 at 39–40.) Plaintiffs insist, even if the counterclaims are not preempted, whether and how a Plan A can recover its own overpayment is governed by the terms of Plan A, not the NRA or the PGA. (ECF No. 190 at 52 & n.35.) Plaintiffs contend the Plan A overpayments are uncertain and unliquidated, because they arose from Aetna's unilateral assertion of an overpayment. (*Id.* at 53–54.) The Court finds Aetna's counterclaims are preempted.

"ERISA's express preemption provision provides that ERISA's regulatory structure 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan subject to ERISA.'" *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293 (3d Cir. 2014) (quoting 29 U.S.C. § 1144(a)). Courts give the term "relate to" "a broad, common-sense meaning, such that a state law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 293–94

46

(quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)) (internal quotation marks omitted). "[A] state law relates to an ERISA plan . . . if the rights or restrictions it creates are predicated on the existence of such a plan." *Mass. Mut. Life Ins. Co. v. Marinari*, Civ. A. No. 07-2473, 2009 U.S. Dist. LEXIS 120716, at *22 (D.N.J. Dec. 29, 2009) (citing *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*, 995 F.2d 1179, 1192 (3d Cir. 1993)); *see also Lapham v. Accenture, LLP*, Civ. A. No. 16-1394, 2016 U.S. Dist. LEXIS 154680, at *11–12 (D.N.J. Nov. 8, 2016) (citations omitted) ("Where the existence of an ERISA plan 'is a critical factor in establishing liability' under state law and 'the court's inquiry must be directed to the plan,' the state law claim 'relates to' [] the plan and is preempted."). "State common law claims fall within this definition" for express preemption. *Newkirk v. Sentman*, Civ. A. No. 20-3055, 2020 U.S. Dist. LEXIS 233109, at *13 (D.N.J. Dec. 11, 2020).

Here, the Court must refer to the terms of Plan A to determine whether and how the Plan A overpayment may be recouped. To decide whether Aetna's overpayment determinations are final, so that Aetna may recoup the Plan A overpayment via its counterclaims, the Court must look into the relevant provisions the NRA and the PGA, which are alleged by Aetna to dictate the dispute resolution process for plan payments. The Court must also ascertain whether the NRA and the PGA cover Aetna's Plan A overpayment determinations against Plaintiffs. In a word, Aetna's state law counterclaims are predicated on, and therefore relate to, the existence an ERISA plan, *i.e.*, Plan A. This triggers express preemption.

A number of courts have similarly found a plan administrator's state law claims, which seek recoupment of overpayments under an ERISA plan, are preempted by ERISA. *See, e.g.*, *Humana, Inc. v. Shrader Sc Assocs., LLP*, 584 B.R. 658, 685 (S.D. Tex. 2018) (finding that the plaintiff plan administrators' state law claims for unjust enrichment and money had and received,

47

which sought restitution of benefit payment under an ERISA plan from the plan members, were preempted by ERISA); *Sanjiv Goel MD, Inc. v. CIGNA Healthcare of Cal., Inc.*, Civ. A. No. 15-5412, 2016 U.S. Dist. LEXIS 195738, at *8–9 (C.D. Cal. Aug. 22, 2016) (concluding that the defendant plan administrator's counterclaims for recoupment,[10] unjust enrichment, and money had and received, which sought "reimbursement for alleged overpayments it made to [the provider] pursuant to an ERISA-governed health and welfare benefit plan," were preempted by ERISA); *Pharmacia*, 126 F. Supp. 3d at 1071–72 (concluding that whether or not the plaintiffs were plan fiduciaries, their state-law claims (including recoupment, accounting, and money had and received), which sought recoupment of benefit overpayment under an ERISA plan from a plan beneficiary, were preempted by ERISA); *Kisor v. Advantage 2000 Consultants, Inc.*, 799 F. Supp. 2d 1204, 1216 (D. Kan. 2011) ("[B]ecause recoupment of benefits was provided for in the plan, the conduct constituted enforcement of the plan, and the [plan administrator's state law] claims [seeking such recoupment] were subject to preemption [under ERISA]."); *Ing Inv. Plan Servs., LLC v. Barrington*, Civ. A. No. 09-3788, 2010 U.S. Dist. LEXIS 86820, at *7–8 (N.D. Ill. Aug. 24, 2010) (concluding that the plan administrator's "state law claims for quantum meruit and money had and received [we]re preempted by ERISA," when the plan administrator sought "reimbursement of the overpayment the [p]lan made to" the plan participant).

  Finally, Aetna cites *Conn. Gen.* to argue ERISA does not preempt an insurer's claims for

---

[10] The recoupment claim is in essence a request for setoff. *See Pharmacia Corp. Supplemental Pension Plan v. Weldon*, 126 F. Supp. 3d 1061, 1070 (E.D. Mo. 2015) (citing *Reiter v. Cooper*, 507 U.S. 258, 264 (1993)) ("[A] claim for recoupment, whether an equitable or legal claim, applies in situations where a party seeks to obtain money owed to it by deducting or offsetting the amounts owed from money it otherwise owes to the other party."); *Cathay Logistics, LLC v. Gerber Plumbing Fixtures, LLC*, Civ. A. No. 15-4146, 2016 U.S. Dist. LEXIS 94200, at *15 (C.D. Cal. July 19, 2016) (citing *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996)) ("Setoff and recoupment are equitable defenses under which a defendant may seek to offset sums owing to the plaintiff against sums owing from the plaintiff to the defendant.").

fraud, unjust enrichment, and money had and received. (ECF No. 196 at 29 (citing *Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*, 54 F. Supp. 3d 260, 264–68 (E.D.N.Y. 2014)).) But this is a misreading of *Conn. Gen.* In *Conn. Gen.*, "the essence of the [plaintiff insurer's] claim [wa]s fraud, and mere involvement of the definitions of the [plan] terms d[id] not implicate the [p]lan so as to warrant preemption." *Conn. Gen.*, 54 F. Supp. 3d at 268 (citing *Geller v. Cnty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996)). The *Conn. Gen.* plaintiff's plan only "provide[d] the context for what, at essence, [wa]s a 'garden variety' fraud claim," which did not "truly 'relate to' an ERISA plan." *Id.* at 267–68. Here, Aetna's state law counterclaims relate to an ERISA plan and do not involve fraud. Therefore, *Conn. Gen.* is distinguishable.

Accordingly, Aetna's state law counterclaims are preempted.

## 2.    Aetna Is Not Entitled to a Motion to Setoff

Aetna argues, because the Plan A overpayments have been reduced to debt, any offsetting by this Court is a procedural act and may be accomplished by a motion. (ECF No. 196 at 30.) The Court disagrees.

"The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). "The right of setoff depends on the existence of mutual debts and claims between creditor and debtor." *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990); *see also Nix v. Option One Mortg. Corp.*, Civ. A. No. 05-3685, 2006 U.S. Dist. LEXIS 2289, at *21 (D.N.J. Jan. 19, 2006) (citing *In re Anes*, 195 F.3d 177, 182 (3d Cir. 1999)) ("The right to set off allows parties that owe each other money to apply

49

their mutual debts against each other."). "[T]he [c]ourt declines to hold that a debtor may set off a debt by an amount that is disputed by a creditor." *Sayre v. Customers Bank*, Civ. A. No. 14-3740, 2015 U.S. Dist. LEXIS 69795, at *27 (E.D. Pa. May 29, 2015). Here, before the Court resolves the merits of Aetna's counterclaims, whether or not Plaintiffs owe Aetna the Plan A overpayments is still under dispute. In other words, Aetna has not yet established the existence of mutual debts between the parties, which precludes granting a motion to setoff at this stage.

### 3.   The Court Declines to Construe Aetna's Counterclaims as ERISA Claims

Aetna suggests the Court should construe its counterclaims as ERISA claims. (ECF No. 196 at 30.) The Court disagrees.

"Although legal claims can be pled in the alternative, a party cannot use summary judgment briefing as a way to inject new legal theories into a case." *Kahan v. Slippery Rock Univ. of Pa.*, Civ. A. No. 12-407, 2014 U.S. Dist. LEXIS 171297, at *13 (E.D. Pa. Dec. 11, 2014) (citations omitted); *see also Phillips v. SEPTA*, Civ. A. No. 16-986, 2018 U.S. Dist. LEXIS 22337, at *9 (E.D. Pa. Feb. 12, 2018) (citation omitted) ("[A] plaintiff cannot introduce new legal theories or claims through an opposition to a motion for summary judgment."). "Federal pleading standards do not allow a party 'to raise new claims at the summary judgment stage.'" *DeWees v. Haste*, 620 F. Supp. 2d 625, 635 n.7 (3d Cir. 2009) (citations omitted); *see also Canadian Nat'l Ry. v. Vertis, Inc.*, 811 F. Supp. 2d 1028, 1036 (D.N.J. 2011) (citations omitted) ("[I]t is too late to introduce an additional claim at the summary judgment stage."). Here, Aetna's proposal to recast its state law counterclaims as ERISA ones is essentially a request to introduce new legal theories or claims, which is improper at this stage.

"At the summary judgment stage, the proper procedure for [Aetna] to assert a new claim is to amend the [Counterclaim] in accordance with Fed. R. Civ. P. 15(a)." *Bell v. City of Phila.*,

50

275 F. App'x 157, 160 (3d Cir. 2008) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). Aetna "cannot amend [its] pleadings in a summary judgment motion," *Olmo v. Atl. City Parasail, LLC*, Civ. A. No. 13-4923, 2016 U.S. Dist. LEXIS 56572, at *19 (D.N.J. Apr. 28, 2016) (citations omitted), or "through arguments in [its] brief in opposition to a motion for summary judgment." *Hilinski v. Potter*, Civ. A. No. 03-3549, 2006 U.S. Dist. LEXIS 62532, at *39 (D.N.J. Sept. 1, 2006) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). Accordingly, the Court grants Aetna the opportunity to seek leave to amend its counterclaims within twenty-one (21) days of the date of this Opinion. Plaintiffs are entitled to summary judgment on all of Aetna's counterclaims.

## IV.    CONCLUSION

For the reasons set forth above, the Court (1) adds Aetna Health as a defendant, (2) removes Aetna Inc. as a defendant, (3) grants summary judgment for Aetna on Plaintiffs' Count I and Count II, to the extent they concern the Plan B claim for Member 39 (Offset 66), (4) grants summary judgment for Aetna on Plaintiffs' Count I and Count II, to the extent they concern the Plan B claims not included in Plaintiffs' summary judgment motion, as listed in Aetna's Exhibit 35 (ECF No. 196-18), (5) grants summary judgment for Plaintiffs on Plaintiffs' Count I and Count II, to the extent they concern the Plan B claims for Member 80 (Offset 6), Member 81 (Offset 10), Member 80 (Offset 15), and Member 81 (Offset 42), (6) orders the parties to file a joint status report within thirty (30) days of the date of this Opinion, to apprise the Court of what further determinations need to be made before a judgment can be entered for Plaintiffs on Plaintiffs' Count I and Count II (*e.g.*, the amount of damages Plaintiffs should recover), (7) grants summary judgment for Plaintiffs on Aetna's Count I, Count II, and Count III, (8) denies summary judgment on the remaining portions of the parties' summary judgment motions, and (9)

allows Aetna to file a motion for leave to amend its Counterclaim within twenty-one (21) days of

the date of this Opinion. An appropriate order follows.


**Date: June 21, 2021**                                        */s/ Brian R. Martinotti*
                                                               **HON. BRIAN R. MARTINOTTI**
                                                               **UNITED STATES DISTRICT JUDGE**